IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Ronald Barkhorn<br>118 Fallston Meadow Ct<br>Fallston Md. 21047<br><br>　　　　　　Plaintiff(s)<br>　v.<br><br>INTERNATIONAL LONGSHOREMEN'S<br>ASSOCIATION, LOCAL NO. 333<br>6610-B Tributary Street<br>Suite 212<br>Baltimore Maryland, 21224-8401<br><br>　　　　　　Defendant | CASE NO. SAG 25 CV 4076 |



USDC- BALTIMORE
'25 DEC 11 PM3:12

## COMPLAINT
## WITH DEMAND FOR JURY TRIAL

Plaintiff Ronald Barkhorn seeks declaratory, injunctive and other appropriate equitable relief, compensatory or other damages, attorneys' fees(if any) and costs against the Defendant International Longshoremen's Association, Local 333 for violations of Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185 and or NLRA 29 U.S.C. § 159(a)

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1337 for civil actions arising under the laws of the United States of America, including, without limitation, (i) an action for breach of the duty of fair representation pursuant to Section 301 of LMRA, 29 U.S.C. §185

2. This Court has pendent jurisdiction over state common law claims asserted herein which are so closely connected to the federal claims that their interrelationship permits the conclusion that the entire action before the court comprises but one case. This Court further has supplemental jurisdiction

1

HD
Rcv'd by: ___

over such state claims pursuant to 28 U.S.C. §1367 where such state claims contain a common nucleus of operative facts that are so interconnected with the federal claims that the Plaintiff would ordinarily be expected to try them all in one proceeding. The state claims are authorized for breach of contract pursuant to the laws of the State of Maryland.

3. This Court has personal jurisdiction over the parties because all Defendants are engaged in business or related activity within the State of Maryland, the acts, events and/or omissions giving rise to Plaintiff's' claims as described herein occurred in the State of Maryland, and the Plaintiff(s) reside in the State of Maryland.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant has their principal places of business in this district, the acts, events and/or omissions giving rise to Plaintiff claims as described herein occurred in this district, and the Plaintiff resides in this district. Venue is proper in this district for state law claims as such claims arose within the City of Baltimore and Defendant union resides.

**Parties**

5. Paragraphs 1 through 4 are incorporated herein by reference as if fully set forth herein.

6. Plaintiff Ronald Barkhorn is a 44 year member of ILA Local 333, a crane operator for Christensen Gang most senior gang for Ports America Chesapeake. Plaintiff resides in Fallston Md.

7. Defendant International Longshoremen's Association Local No. 333 ("Local 333" or the "Union") is a labor organization, which operates as a local affiliate of the International Longshoremen's Association. Defendant Union now is, and at all times relevant herein has been, a labor organization representing employees in an industry affecting commerce as defined in Sections 501(1) and (3) and 2(5) of the LMRA, 29 U.S.C.A. § 142(1) and (3) and § 152(5), and within the meaning of Section 301 of the LMRA, 29 USCA § 185 and NLRA, 29 U.S.C. § 152

8. During all times relevant hereto, Defendant Local 333 was the certified collective bargaining representative of the bargaining unit consisting of certain longshoremen employed by members of Defendant Steamship Trade Association, including Plaintiff, who work in the Port of Baltimore. Defendant Local 333 is a signatory to a collective bargaining agreement ("CBA") with Defendant Steamship Trade Association ratified February 25, 2025.

## FACTS - BACKGROUND

9. Paragraphs 1 through 8 are incorporated herein by reference

10. Prior to 1971, African American employees belonged to ILA Local 858, while white employees belonged to ILA Local 829. Gangs were assigned work based on Race, Black gangs got low pay dirty work, White gangs got higher pay good work. In 1971, this Court issued a permanent injunction expressly barring _discrimination_ with regard to race or color CV H-20688 "Harvey Decree". This Court also directed the adoption of a "Seniority Agreement"[1] _(see Doc 1)_ the purpose of which was to prevent further discrimination. This Courts order expressly states "Gangs shall be hired by company seniority" a modification was adopted by "DOJ" Oct. 27, 1972[2] (_See Doc 2_)"beginning October 30, all companies shall apportion work among all regular gangs in such a manner as to equalize annual earnings as nearly as possible". This agreement was incorporated into subsequent consent order December 8, 1977 (_See Doc 3 & 4_)[3] which settled the Contempt action. This seniority agreement was enetered into law Oct. 3, 1972 (_See Doc. 1-b_) is part of current CBA (See relevant parts _Doc. 5_ CBA Art. IV-F pg 13, Art. IX pg 27) This Court retains jurisdiction over the case, jurisdiction continues today supplemental order #3.(_Doc 6_)

---

[1] Docket #48 entered into law Oct. 3, 1972 Hon. Judge Harvey "gangs must be hired based on company seniority"
[2] gangs can be "Rotated with eqaulized earnings"
[3] Doc #3 docket #169 7/1/75, doc #4 Judge Harvey letter to STA attys March 28. 1977 confirming seniority agreement

11. Currently permanent jobs filled by members of the bargaining unit represented by Local 333 are divided into permanent job assignment categories: (i) Top-man/Crane Operator; (ii) Foremen, Gang-Carrier; (iii) Tractor Driver; (iv) Mechanic; (v) Gearman; and (vi) Longshore Class.

12. The "Longshore Class" is comprised of: Gang Workers, Terminal Longshoremen and Unattached (unemployed) Longshoremen. 2 Top man (crane operators), 1 gang carrier and 12 or more longshore category workers make up a gang. Only gang-workers have been targeted for elimination of seniority & vague undefined "safety/reliability/production" based hiring by new 9/1/24 gang hire system all other class workers are hired by company seniority each day with no discrimination.

13. The Longshore Class workers are hired into specific gangs by portwide seniority, and are dispatched daily by gang from the STA Central Dispatch Center (the "CDC") "unattached" or unemployed Longshore Class workers may fill temporary daily vacancies (call in sick, no show worker) as needed.

14. Currently there are about 25 gangs (240 workers) in Local 333 jurisdiction for 7 stevedore companies (Port America chesapeake 11 gangs, MTC 4 gangs, SSA 3 gangs, Tartan 3 gangs, APS 1 gang, Red hook 1 gang, Domino sugar 2 small gangs. Approximately 25% of the permanent attached employees of Local 333 who work in the Port are members of Gangs. The majority of 333 employees are in the driver category roughly 60% of permanent employees. Gangs are the only traditional african american category of workers as decided in USA V ILA Harvey decree case 48 African american gangs, 30 white gangs when segregated locals merged 1974.(ILA 333 has removed the court ordered A prefix for all white members and B prefix for all Black members attached to the port ID that was ordered to monitor race based systemic discrimination, also Local 333 has refused to produce the master seniority lists with gangs seniority for each employer, where workers can easily see each permanent employee in the union, their company seniority and portwide seniority, if they are black or white systemic race or age discrimination. Previously this information was posted at the dispatch

4

center for all to see to insure no corruption is happening with new members being assigned proper seniority as previously it was revealed Brian armontrout and Paul peters paid $25k each for the seniority they wanted (1:2009cv00109 Quarles )

15. All workers in a permanent job category are assigned to a single employer and they hold company seniority with that single employer. Plaintiff works at Seagirt Marine Terminal for Christensen Gang as crane operator, there are 8 gangs assigned to "SMT"

16. May 2008 to March 1, 2023 a new gang hire system was secretly agreed that stripped seniority provisions of CBA and used vague terms for hiring gangs injuries/accidents/reliability /production (see *Doc. 7 and 8* explaining new system and monthly report showing gang workers being laid off for injuries or production). Prior to May 2008 the union enforced the Seniority agreement from Harvey Decree and gangs were hired by seniority or rotated equal earnings. This issue was litigated by Hon. Judge Bredar and Gauvey in *Barkhorn V Ports America* JKB-10-750 for ADA association discrimination, when a fellow gang worker, Terry Neblitt was totally disabled from an injury that had nothing to do with "gang safety", which is the term in the CBA that ILA 333 allowed to be used to lay off gangs for an injury. Hon. Maj. Gauvey ruled that the union agreed to this system and we didn't sue the union and that ports america did not violate the ADA .

17. Another Class based action *Sewell et al v ILA Local 333 et al*, JKB-12-044 concerned the same gang hiring issues of ILA 333 not fairly representing gang workers. This court dismissed relevant counts herein without prejudice after Local 333 said they need time to fix these problems and process grievances, while this court dismissed "WITH PREJUDICE" all liability for STA of Baltimore and all employers. Local 333 made no effort to process grievances, or to follow arbitrator Vaughn directives to define the words production, reliability and safety and include a clause to challenge assesment of safety, as any gang can be permanently laid off for safety and the union has no right to greive "safety termination or demotion".

18. An arbitration by David Vaughn, whether employer retaliated for filing eeoc charge advised the CBA language of gangs being hired by "Safety, Production and reliability" found at ECF 1:12-CV-00044-JKB doc. 23-3 filed 6/7/12. Vaughn states on Pg 37. "while the entire gang works together for safety, most accidents/injuries are not the fault of the entire gang" David Vaughn directed the union to correct the deficiencies of CBA in bargaining,(define safety, production, reliability and include a clause to challenge assesment of safety) as Local 333 has no right to greive safety assessments that cause gangs to be laid off. pg. 42. All other non gang workers are provided due process by Local 333, they get a warning letter if they have a safety violation or production issues or reliability issues, gang workers are laid off with no letter based upon the production, injury, reliability of another worker they have no control over. This has caused gangs to tell fellow workers in that gang to not report injuries or accidents, or take the injury to another company the next day and report the injury there, so the gang will not be laid off. Gangs have no control at all over attached workers that are hired by seniority each day and could care less about production, the slower they work, the more money they make, causing fights and arguments on the docks as gangs are hired by production and those totally responsible for production (foreman, drivers, clerical workers ship planners, toploaders etc) are hired by seniority with no production metric involved at all. Gangs have little to do with production, lashers go on the ship early without pay to unlash cargo so the gang can start producing at start time 7 am/8am. Workers hired by seniority have filed charges against gangs for going to work early without pay and advancing the operation. This dichotomy has caused permanent tribal warfare on the docks between Local 333 members with union rights & gang workers hired by undefined terms like safety/reliability/production. CBA clearly states gangs must be hired by this courts seniority system injunctions & qualification (experience) see *Doc 5* , 333 refuses to enforce court orederd cba rules

19. March 1, 2023 ILA 333 bargained to return to the court ordered seniority agreement of the Harvey Decree Injunctions (Rotate gangs equalized earnings for each company *See Doc. 9)* after it

6

was discovered racketeering was going on by some gangs paying to be assigned high production work (tandem/twin pick moves of 2 containers per lift, be assigned newer high speed cranes instead of old slow cranes, be assigned high production foreman/truck drivers and toploader operators that move cargo to and from the ship). Gangs assigned high production work can do up to 70 containers per hour, gangs assigned low production work (old cranes going over containers on deck, inexpereineced foreman, drivers or toploader operators, ships with many hatch cover moves that do not count as production) can do 25-30 containers per hour or less. High ranked gangs under this system are assigned large ships with up to a thousand containers per gang in a few hatches using new fast post panamax cranes at berth 3 or 4 SMT *Seagirt Marine Terminal* the most senior, experienced, productive foreman, clerical workers, 5th wheel drivers that bring cargo to the ship, and most importantly toploader operator (large machine that lifts containers onto/off of 5th wheel drivers trailers in lot to send to ship for gangs to load or to discharge in lot the gang can only produce what the toploader produces). Low ranked gangs in this system are assigned old 1980's era cranes, small ships with many hatches of work and hatch cover moves to work under deck(causing severe lost production that is used against that low ranked gang, the lowest seniority least experienced, least qualified foreman, drivers, clerical workers, toploaders meaning the gang can only produce what these workers that mostly control production actually produce. The system is designed to lock gangs into their place, and the employer has total control over what work, cranes and other workers that control production are assigned to each gang. All gangs produce about the same rate if all work assignments were equal, which never happens each ship is different, each assigned non gang worker has far different skills levels.( *see Doc. 10* showing actual work on ship and lost production not the fault of gangs) Gangs paying or trading union benefits for high production work will stay at the top of the production/injury/reliability hiring system and earn three times the wages of gangs not involved with previous or possible current quid pro quo.

20. Some gangs such as me and John Hewins old gang Jackson then R Glenn would trade things of value like, telling the employer don't pay us for the time worked, back date the end time of ships as to not pay penalty hour pay (2x rate) such as meal hours (working thru meal periods to finish ships etc) or violate other union rules to save the employer money and thereby negotiate to be assigned high production work in return for violating union rules under the hiring system from 2008-2023. (witness 1st hand). Other gangs reportedly paid cash for high production work causing 2008-2023 system to be replaced.

21. From March 1, 2023 to Sept. 1, 2024 gangs under ILA 333 jurisdiction worked as directed by this court, Rotate gangs equalized earnings.(*Doc. 9*) Sept. 1, 2024 a union officer made a secret agreement(*see Doc. 11*) to negotiate a new gang hiring system that once again violated all the court ordered protection for Baltimore longshoremen gang workers under ILA 333 jurisdiction. A complaint was filed with ILA 333 executive Board, (*see Doc 12*) the highest ruling body between membership meetings, to assign any bargaining for new hiring system to our elected representatives for that purpose, the "wage scale committee" of ILA 333 whose sole duty is to bargain for the new CBA provisions, as the secret agreement was made without bargaining representatives present or the membership voting for it. (the 2018-2024 CBA expired Sept. 30, 2024, Wage scale committee was negotiating a new cba and a ratification vote was scheduled for Feb. 25, 2025. There was no legal reason for a union officer to make this secret agreement that no one wanted and the members would totally reject when our elected bargaining agents were bargaining for a new agreement)

22. Other complaints and requests for the new gang hiring system agreement and seniority lists for gangs, as the new system stripped all seniority rights from all 240 gang workers in ILA 333. An employer handed out a new gang system *(Doc. 11)* that said any gang can now be made an alternate and a new gang can be hired, this radically strips all seniority rights as the CBA states gangs must be laid off in inverse order of their company seniority, My current gang Christensen was hired

by ITO/ Jarka 1933, then merged with Atlantic and Gulf stevedores 1980's where the dove tail seniority merge placed my gang as top senior gang over ITO gangs hired about 1938 (see *Doc 13-14*) concerning requests for this information, ILA 333 still refuses to reduce this new system to writing or comply with NLRB laws to provide seniority lists for gangworkers gang seniority positions.

23. Several NLRB Charges, 2 in 2008-2010 & 1 about 2017 were filed for ILA 333 refusing to arbitrate the cba 2008 forward concerning the 2008-2023 injury/reliability/production system of gang hiring. NLRB demanded 333 arbitrate the cba, but Local 333 arbitrated whether an employer retaliated against my gang for filing an EEOC charge for ADA *see vaughn arbitration above*(cba does not contain a provision for disability discrimination at all, the arbitration was a farce) A new NLRB charge was filed Jan. 17, 2025 (05-cb-359252) for the alleged violations found in attached documents see (*Doc 15*) currently pending <u>delayed from government shutdown</u>. (processed by NLRB affidavit and ammend charges Nov. 19, 2025)

24. An internal charge was filed against ILA 333 Executive Board April 2025, which was adopted by the ILA Atlantic Coast District ACD. A trial was held in New Jersey (*Doc. 16*), testimony of John Hewins proved the 2008-2023 system caused racketeering, and that gangs are assigned high or low production work and can only produce based on the work they are assigned, or the cranes they are assigned. Immanual Pitts a member of Mike Brogley gang about 2008 with MTC stevedoring testified he was in the most senior gang with MTC when his gang carrier Mike Brogley fell and broke his hip on a ship, then his gang was permanently laid off for years based on that injury. The whistle blower for racketeering was suppose to testify, but was advised not to talk. I testified to the attached documents and supplied the court ordered seniority system "gangs must be hired by company seniority" (*Doc 1-4*) or by DOJ Oct 1972 agreement to rotate gangs with equalized earnings. Also top gangs in this sytem were working 2 or 3 times a day round the clock, while lower gangs had no work violating 1 job a day rules.

ILA ACD found no violation of ILA by laws (*see Doc 17* findings of ILA ACD) dated june 11, 2025 recieved by mail "June 14, 2025"

25. ILA 333 refused to provide new gang hire system in writing, then held a ratification vote Feb. 25, 2025, without the new gang hire system written on the paper handed out before the vote, the Wage scale committe did not bargain 9/1/24 new hiring system for gangs that stripped seniority rights, the membership had no clue they were voting to go back to the racketeering system from 2008-2023 ruled illegal by eeoc, members thought gangs were rotated still (*see Doc. 17* handed out to members before ratification vote 2/25/25 new gang hire system at issue not included on paper)

26. I continued working for R Glenn gang, a high seniority ports america gang at SMT, my crane partner for many years became outraged at the new system after he was blamed for lost production he had nothing to do with, as i was also blamed under the new system, we did nothing wrong at all *(see Doc 18).* John Hewins stopped coming to work, I told him i had filed an NLRB case, the union was illegal and it can be fixed, try to come to work and hang in there till we get some help. John told me he would get ready to come to work and have panic attacks from hating what was going on, and all the harrassment gang workers now suffer from under Sept. 1, 2024 system. I had to quit the gang after about 4 months of John not coming to work to get a new crane partner, I joined Christensen gang which is the most senior gang for Ports America company wide. I stayed in touch with John and he agreed to testify for NLRB or in court about the system and how it destroyed his career, John was 44 yrs old, high seniority, best crane op on east coast & was recruited by other ports to leave baltimore and drive there.

27. Oct 22, 2025 i got a call that John Hewins had commit suicide at home, I had just talked to John a few days before that, he told me he quit R Glenn gang and took a foreman job for an auto handler stevedore but did not like it, and said he was waiting for a new company to come to port to work sparrows pt container terminal, i let john know the NLRB charge was frozen from the gov shutdown but i was working on the case with NLRB agent, let him know it looks good for NLRB to fix some of the

issues. I saw John became depressed and could no longer come to work from union selling out his job. John told me several times he thought racketeering was going on again as he saw how the high production work was being assigned to the same gangs, and gangs not in the clique got garbage work. I talked to Johns wife several times before and after the funeral, as she had a paycheck that was mine and i owed her money for a check of Johns i mistakenly cashed in June. Johns wife Holly Hewins told me John became very depressed from what happened at work and changed. She also told me she had brain cancer and had surgery and was now totally disabled. I was in shock from this tragedy and became very upset and started filing with the union again to fix this horrible system that killed my partner. I told Holly NLRB had the case & i would do whatever it takes to resolve what caused Johns Death.

28.  In October 2025 it was discovered that Local 333 had brought hundreds of new workers into the union without membership approval, these new workers earn $20 an hour less that senior workers, are younger, and don't know the rules, and don't file greivances or complain about any violations at work. No one can file a greivance for the new gang hire system because the union has still not reduced it to writing, or defined the terms safety, reliability, production, or create a clause to challenge assesment of safety. Now it is revealed that the union is working on a buyout for senior workers that earn top pay, then workers started to figure out that Local 333 eliminated the seniority system only from gangs (only traditional african american class of workers), at the same time bringing in hundreds new members that earn $20 less than older workers, and was putting together a buyout package to entice older workers from the industry saving millions yearly in wages and benefits for the employers. Gangs have alot of older senior workers because after unlashing cargo on car ships or any ship by going on the ship early without pay, the employer allows lashers to go home and be paid. Senior workers like this perc, and join gangs, as only gangs have this benefit from working without pay to set the ship up for instant production at start time. Many workers now believe ADEA systemic violations are the strategy of Local 333 and the employers, and that a union officer was paid a lot of money to

make this happen, all done in secret, no one even knows who agreed to this new system Sept. 1, 2024. I have filed an inquiry with EEOC (531-2026-01030), talked to EEO agent , we are filing class based systemic ADEA for all gang workers over 40 yrs old ASAP (300 days from Feb 25, 2025 ratification date, although the system still not in writing or understood by workers). A worker from Brian warch gang, that was laid off under this new system , while gangs with far less seniority work everyday, He is filing EEOC for the Harvey decree civil rights violations since Local 333 eliminated all seniority rights for gangs, he is african american, as is the gang he is in.

29. A previous ADEA systemic violation was brought to this court Case # <u>WMN-15-572</u> , where it was proven that Local 333 was solely responsible for a rule whereby members could not be trained for crane operator, toploader or RTG (rubber tire gantry) cranes if they were over 40 yrs of age. The EEOC ruled twice that its illegal to do this, but I had to file in this court, the judge dismissed with prejudice the employers and STA of Baltimore, that testified they had no problem training me, but the union refused to train/certify me, The Judge set the case for trial against Local 333, then Local 333 settled before trial, paid 5k , when i lost over a $1 million in wages from 2005 when the discrimination started. Then sent me to be trained and certified. All workers over 40 were allowed to be trained. Systemic discrimination is a stain of Our history in Local 333 unfortunately, even with this courts landmark Harvey decree demanding seniority rights and "no discrimination of any sort whatsoever" for all members of Local 333.

## Allegations

30. There are numerous questions of law and fact, including without limitation, the following:

    A.    Whether the allegations set forth in this Complaint took place;

B.   Whether the policy of penalizing an entire gang when a single member of the gang is injured, deemed not reliable, has an accident, or is unproductive for whatever reason

C.   Whether the policy of penalizing an entire gang when a single member of the gang is injured, deemed not reliable, has an accident, or is unproductive for whatever reason violates the Constitution of Local 333, Harvey Decree seniority Injunctions, LMRA and NLRA DFR

D.   Whether Local 333 has breached its DFR with bad faith bargaining.

E.   Whether Defendant Local 333 has breached its duty of fair representation by arbitrarily and capriciously failing to timely pursue arbitration to clarify gang hiring provisions that include the Harvey decree seniority systems in CBA (*Doc 5*).

F.   Whether Defendant Local 333 has breached its duty of fair representation by failing to timely and properly process grievances by members and provide seniority lists or reduce this new system to writing so workers understand whats going on.

G.   Whether bargaining was "fair and democratic" when held without elected bargaining representative (wage scale commitee) or the workers?*(see doc 16 internal charges)*

H.   Whether local 333 did not apply the injury/accident/reliability/production based hiring uniformly to all members or targeted a historically African American group of workers as ILA Code of Ethics and 333 bylaws forbid, as all other categories are seniority hiring no collective punishment without due process.(Mechanic category is 95% white and has seniority rights)

I.   Whether the actions of Defendant violates the Order of this Court issued by Judge Alexander Harvey II in *U. S. v. International Longshoremen's Association*, 319 F.Supp.

737 (D.Md. 1970), *aff'd* 460 F.2d 497 (4th Cir. 1972), *cert. denied International Longshoreman's Ass'n v. U.S.*, 409 U.S. 1007 (1972).

J.   ADEA Violations- Whether the alleged strategy of this entire scenario is to force high pay workers over 40 yrs of age to leave the industry by harrasment, lost wages, stripping of all seniority rights only from Gang workers, quit their jobs from gangs and take other jobs with less percs, or other hostile workplace rules only for gang workers that now have no union rights under the Sept. 1, 2024 gang hire system *(Doc 11)* is a class based systemic violation of ADEA ?

31.   Plaintiff has (i) been a member Local 333 in good standing since Oct. 1981 and is/has been a member of a gang that have been penalized when a member of the gang has been injured/deemed unreliable/one member had an acident/or deemed low production since May 2008; (ii) has suffered financial loss in the form of lost wages and lost job opportunities as the direct and proximate result of the breach of the DFR, NLRA , Local 333 By-Laws, and Harvey Decree Injunctions; (iii) been denied due process and fair representation by collective punishment under federal guidelines; (iv) suffered financial loss as the direct and proximate result of Defendant Local 333's failure to timely and properly pursue bargaining as directed in DFR, NLRA, Local 333 by-laws and ILA rules, file grievances and arbitration to clarify the gang hiring system CBA which includes this Courts seniority system agreement *(doc 5)* .

## COUNT I
## BREACH OF DUTY OF FAIR REPRESENTATION
### (Discrimination/No Due Process for Injury/reliability/production hiring)

32.   Paragraphs 1 - 31 are incorporated herein by reference as if written herein;

33. The collective bargaining agreement prohibits discrimination against members of the bargaining unit for any reason. Local 333 targeted and applied a hostile anti union hiring system only against gangs and their 240 workers in 333 Baltimore jurisdition. created applied Sept. 1, 2024, ratified Feb 25, 2025 (members had no clue what they voted for still), findings from internal charges June 11, 2025 received by mail June 14, 2025. All other Local 333 members have union rights and seniority rights that prohibit all discrimination. Vaughn interpreted the CBA that individual violations are different than "gang" violations. The CBA also sets forth provisions for due process, so that the union is notified when any member is disciplined to allow for representation. Gangs and their members are punished outside the discipline provisions, with no due process whatsoever. The union can challenge production calculations, but did not define production, it means whatever employers say it means, failed to bargain to challenge "safety". Meaning the employer has unilateral control over any safety issue, can call anything safety, & lay off 12 gang workers without any union involvement, or the right to grieve the safety assessment. (*see Vaughn arbitration* ECF 1:12-CV-00044-JKB doc. 23-3 filed 6/7/12)

34. The practice of moving a gang to the bottom of the hiring list when any member or temporary fill-in worker in the Longshore Class reports an injury/accident/is deemed unreliable /unsafe/unproductive without definition of these terms for files a claim for compensation under the Longshore Harbor Workers Compensation Act discriminates against and penalizes all members of the gang as well as Longshore Class fill-in workers. Only Gang members and their Longshore Class fill-ins are subjected to such discrimination; other class members (Drivers, foreman, mechanics, gear-men) hired in groups or individually are assigned by seniority and qualification without regard to injuries, incidents/production or reliability or filing claims for benefits under the LHWCA

35. Plaintiff has experienced significant financial loss as the direct and proximate result of this "gang penalty" policy where the whole gang is denied work opportunities because of the injury or

claim arising from injury of one individual. Gangs denied work for safety/reliability/production violations are not provided CBA discipline process with gradual punishment and rights to grieve the punishment, In fact there is no due process whatsoever for gang workers as individuals, that are laid off/demoted for more than a year, when their gang is deemed in violation of vague arbitrary subjective unwritten rules. Local 333 applied a collective punishment system solely against gangs.

36. Plaintiff and many others have repeatedly sought to pursue grievances or complaints through Defendant Local 333 to address this Sept. 1, 2024 gang hire system, follow By-laws, DFR, NLRA and democracy of our union. Plaintiff and Arbitrator Vaughn have asked Defendant Local 333 to address this discriminatory practice through collective bargaining. However, Defendant Local 333 has forgotten, or bargained away gang worker rights to secure better terms for politically powerful drivers that make up 60% of the local.

37. By arbitrarily and capriciously refusing to pursue grievancessolutions for discrimination against 240 gang workers and Longshore Class gang fill-ins who are harmed by this gang hire system or to seek redress at the bargaining table, the Union has breached its duty of fair representation.

## COUNT II
## VIOLATING "HARVEY DECREE"

38. Paragraphs 1 - 37 are incorporated herein by reference as if written herein

39. The order issued by Judge Alexander Harvey II of this Court in 1971and 1977 directed ILA 333 to implement a non-discriminatory seniority system. *Harvey Decree* Seniority Agreement (V). <u>Gang Seniority</u>: "the employers having permanent gangs assigned must employ these gangs in accordance with their seniority with that employer consistent with their qualifications". Local 333 did not seek this courts guidance or agreement to drastically change the gang hiring provisions of the Harvey Decree since Judge Harvey last order December 1977, last docket entry 1983

40. Defendant Local 333 was provided the entire seniority agreement and DOJ modifications since 2010 and in other litigation concerning the Harvey Decree orders, but have disregarded the terms of the permanent injunctions by: knowingly discriminating; being dishonest with this Court; failing to pursue remedies at the bargaining table; failing to abide by and utilize the seniority plan approved by this Court(entered into Law Oct.3, 1972[4]; and causing unnecessary harm after being notified of permanent injunctions.

41. This failure to comply with this Court's permanent injunction constitutes utter contempt of this Court and its Order. Local 333 also lied to this court in *Sewell v ILA Local 333 (see above)* Promising to correct these violations if this court dismissed without prejudice to give Local 333 time to correct through bargaining, its been 13 yrs since this promise, and here we are.

42. As a direct and proximate result of the failure of Defendants to comply with the Court's Order, or promises made in *Sewell* plaintiff and others have suffered substantial losses in wages, benefits, legal/court fees and joy of life and Death.

## Count III
### Breach of Contract ILA 333 By Laws/ILA Rules

43. Paragraphs 1 - 42 are incorporated herein by reference as if written herein

44. ILA Local 333 has breached its By-laws and ILA Constitution and Rules of Order contractual agreement with its members by agreeing gangs can be laid off/demoted for an injury/reliability isse/accident/production issue from one person working as a daily fill in. Article 3 Local by-laws states the union shall "work for the best interests of the members", not choose a political minority for this Hostile system, while all other categories are hired by seniority without regard for injury/safety/reliability/production, and all other individuals are afforded disciplinary provisions of CBA with union notification and representation in bargaining and grievances. Gang workers are not

---

[4] Docket #48 "stipulation between parties re: implementation of seniority agreement therein more particularly set forth and filed"

notified of any violations, they are simply laid off/demoted with no record to challenge, or written CBA provision to challenge

## RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court

(i) Grant preliminary and thereafter permanent injunctive relief prohibiting Local 333 from violations of this courts Injunctions, LMRA/NLRA and By Laws/ILA Rules directing them to return to the seniority system in the permanent injunction of this Court & CBA retaining jurisdiction by this Court;

(ii) Grant preliminary and thereafter permanent injunctive relief prohibiting Defendant from discriminating against any gang, gang member, Longshore Class gang fill-in or Longshore Class Member on the ground that a member of a gang or gang fill-in is injured or files for benefits under the Longshore Harbor Workers Compensation Act "LHWCA" or is laid off by collective punishment caused by another worker (reliability, safety, accident, production)

(iii) award Plaintiff(s) damages equal to the amount of wages and benefits lost as a result of the discriminatory practices described in the Complaint, as well as attorney's fees(if any) and the cost of this litigation and past litigation concerning these same issues, as John Hewins would most likely be alive if this case was tried in *Sewell* Where 550 class members were represented by a labor atty., but for dishonesty by Local 333 which caused this court to have faith in the testimony of Local 333; and

(iv) award such other Compensatory relief as this Court may deem just and proper, including family members of those deceased/harmed from hostile hiring systems, targeting a 25% minority class of Local 333 members, not voted by workers or bargained by our elected bargaining reps.

Ronald Barkhorn, December 11, 2025

*Ronald Barkhorn*, 12-11-25

Cc: NLRB, EEOC, ILA ACD trial commitee, ILA 333